UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| TRAVELL MARTECE WOLFE,<br><br>                    Movant,<br><br>          vs.<br><br>UNITED STATES OF AMERICA,<br><br>                    Respondent. | 4:21-CV-04040-KES<br><br><br>REPORT AND RECOMMENDATION |

**INTRODUCTION**

This matter is pending before the court on the *pro se* motion by Travell Martece Wolfe pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence.  See Docket No. 1.[1]  Now pending is a motion by respondent the United States of America ("government") to dismiss Mr. Wolfe's motion without holding an evidentiary hearing.  See Docket No. 18.  Mr. Wolfe has not responded to the government's motion and the time for doing so has long passed.  This matter was referred to this magistrate judge for a recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and the October 16, 2014, standing order of the Honorable Karen E. Schreier, United States District Court Judge.

---

[1] References to documents filed in Mr. Wolfe's civil habeas case will be cited by reference to the document number assigned in the court's electronic docketing system.  References to documents in Mr. Wolfe's underlying criminal case, United States v. Wolfe, 4:18-cr-40124-KES-4 (D.S.D.) will be cited by the court's electronic docketing number preceded by "CR."

## FACTS

### A.     Pre-Plea Proceedings

The facts pertinent to Mr. Wolfe's request for relief and the government's motion to dismiss are as follows.  Mr. Wolfe was indicted by a federal grand jury in this district on October 10, 2018, and charged with conspiracy to distribute 40 grams or more of a mixture and substance containing fentanyl. CR Docket No. 1.  A superseding indictment was filed February 5, 2019, changing the dates alleged as to the conspiracy's existence.  CR Docket No. 79.

At Mr. Wolfe's initial appearance on January 24, 2019, the court appointed attorney Jennifer Goldammer to represent Mr. Wolfe.  CR Docket No. 69.  The bail report filed in connection with Mr. Wolfe's initial appearance indicated he had a March 26, 2018, felony firearms charge from Minneapolis, Minnesota, that was dismissed July 2, 2018.  CR Docket No. 66 at p. 3.

On December 5, 2019, Mr. Wolfe filed with the court a written plea agreement, statement of factual basis, and plea agreement supplement.  CR Docket Nos. 179-181.

### B.     Plea Agreement Documents and Change of Plea Hearing

The written plea agreement recited that Mr. Wolfe would plead guilty to the sole count in the superseding indictment which carried a mandatory minimum sentence of five years' imprisonment and a maximum sentence of 40 years.  CR docket No. 179 at p. 2, ¶ C.  In return, the government agreed that Mr. Wolfe should receive three points downward adjustment to his United

States Sentencing Guidelines ("USSG") base offense level for accepting responsibility.  Id. at pp. 3-4, ¶¶ E & F.

The agreement provided both sides could recommend whatever sentence each felt was appropriate.  Id. at p. 4, ¶ G.  Mr. Wolfe attested in the written plea agreement that the accompanying statement of facts, which was signed by the parties, provided a basis for his guilty plea and was true and accurate.  Id. at p. 6, ¶ J.  The factual basis statement did not mention any firearm.  CR Docket No. 180.

A change of plea hearing was held on December 19, 2019.  CR Docket No. 247.  At the beginning of the hearing, Mr. Wolfe was placed under oath.  Id. at p. 2.  All of the testimony recounted below was given by Mr. Wolfe under penalty of perjury.  Id.

Mr. Wolfe told the court he had graduated from high school and had some college classes.  Id. at p. 3.  He was not under the influence of drugs or alcohol and had not been treated recently for mental illness or addiction.  Id. He stated he had read and discussed the superseding indictment with his lawyer and that he was fully satisfied with the counsel, representation, and advice he had received from Ms. Goldammer.  Id.

Mr. Wolfe told the court he had read and understood the terms of the written plea agreement.  Id. at p. 4.  He stated he understood the court could sentence him more severely than he anticipated.  Id. at pp. 4-5.  Mr. Wolfe stated he understood if he received a more severe sentence than anticipated he would not be allowed to withdraw his guilty plea.  Id.

3

Mr. Wolfe testified that no one had threatened him or tried to force him to accept the plea agreement.  Id.  Instead, he stated he was pleading guilty of his own free will because he was guilty.  Id. at p. 5.

Regarding the United States Sentencing Guidelines ("USSG"), the court specifically told Mr. Wolfe that the court could not determine at that time what his guidelines range would be.  Id. at p. 6.  The court explained that the presentence investigation report (PSR) would calculate his USSG range.  Id.  Because the report was not yet written, the court did not know what calculation the PSR would contain.  Id.  In addition, the court explained that both sides had the opportunity to file objections to the PSR and that the court would then rule on those objections.  Id.  Only after all these steps would the court be able to determine Mr. Wolfe's advisory USSG range.  Id. at pp. 6-7.  The court specifically explained that the final USSG calculation might be different than what Mr. Wolfe's attorney estimated.  Id.  Mr. Wolfe stated he understood all this.  Id. at p. 7.

The court went on to explain that, even after it had determined Mr. Wolfe's USSG range, the court would have to consider whether there were reasons to sentence him to a higher or lower sentence.  Id.  Mr. Wolfe told the court he understood his sentence could end up being more or less than the advisory guideline range.  Id.  After these advisements and others, Mr. Wolfe entered a plea of guilty to the superseding indictment.  The court then made the following findings:

> It is the finding of the court in the case of United States versus
> Travell Wolfe that the defendant is fully competent and capable of

4

entering an informed plea.  That he is aware of the nature of the
charges and the consequences of the plea.  And that the plea of
guilty is a knowing and voluntary plea supported by an
independent basis in fact containing each of the essential elements
of the offense.  The plea is, therefore, accepted, and the defendant
is now adjudged guilty of that offense.

Id. at pp. 10-11.

## C.    Draft and Final Presentence Investigation Reports ("PSRs") and Objections Thereto

A draft PSR was issued on February 3, 2020.  CR docket No. 198.  The

draft PSR mentioned two firearms in connection with Mr. Wolfe.  Id. at p. 7,

¶ 24.  It was reported that on March 26, 2018, a stolen firearm had been

recovered from Mr. Wolfe's automobile in connection with a search warrant

issued for a residence Mr. Wolfe was residing in at the time.  Id.  On September

6, 2018, another firearm was found in that same residence after Mr. Wolfe left

to drive to a controlled buy.  Id.

The draft PSR calculated Mr. Wolfe's advisory USSG range as follows:

Base offense level                          30

Possession of a firearm                     +2[2]

Acceptance of Responsibility                -3

Total Offense Level                         29

Id. at p. 10, ¶¶ 37-47.

---

[2] The draft PSR references both the firearm found in Mr. Wolfe's vehicle on
March 26, 2018, and the firearm found in the residence on September 6, 2018,
as factual predicates for this two-level enhancement.  See Docket No. 198 at
p. 10, ¶ 39.

5

With an offense level of 29 and a criminal history category of III, the draft PSR arrived at a sentencing range of 108 to 135 months' imprisonment. Id. at p. 17, ¶ 85. The draft PSR indicated that Mr. Wolfe's March 26, 2018, felony firearms charge from Minneapolis was dismissed" Id. at p. 13, ¶ 59.

Counsel for Mr. Wolfe filed several objections to the draft PSR. CR Docket Nos. 199 & 200. None of these objections were related to the gun enhancement. Id. A final PSR was filed March 2, 2020, in which the USSG calculation remained the same as in the draft version. CR Docket No. 204 at pp. 10 & 17. The description of Mr. Wolfe's March 26, 2018, firearms charge and September 6, 2018, felony drug charges from Minneapolis remained the same as in the draft version. Id. at p. 13, ¶¶ 59-60. The factual predicate for the firearm enhancement to the USSG offense level remained the same. Id. at p. 10, ¶ 39.

## D.    Sentencing Hearing

Mr. Wolfe's sentencing hearing was held on March 16, 2020. CR Docket No. 249. Prior to the date of the hearing, numerous letters of support were filed by counsel on Mr. Wolfe's behalf. CR Docket Nos. 208 & 211.

In addition, Mr. Wolfe submitted a hand-written allocution statement to the court on March 9, 2020, five weeks after the draft PSR had been disclosed to him and a week after the final PSR had been made available to him. CR Docket No. 207. Mr. Wolfe apologized for committing his crime and purportedly took "full accountability" for his "role in the case." Id. at p. 3. Mr. Wolfe never mentioned the firearm issue in his statement to the court. Id.

6

One of Ms. Goldammer's objections to the PSR was that Mr. Wolfe should receive a two-level reduction under the USSG for being a minor participant. CR Docket No. 249 at pp. 8-9. The court sustained the objection and granted Mr. Wolfe a two-level reduction. Id. at p. 9. With an adjusted offense level of 27 and a criminal history category of III, the court announced Mr. Wolfe's revised USSG range was 87 to 108 months. Id.

Mr. Wolfe personally addressed the court orally in open court. Id. at p. 12. He began by stating he took "full responsibility for [his] role in the case." Id. Mr. Wolfe acknowledged that his actions were "very wrong" and that he was not trying to "make excuses." Id. at p. 13. Mr. Wolfe revealed he had studied the PSR when he remarked that, "as is stated in my PSR report, that I didn't get no credits from Taylor Business Institution." Id. at p. 14.

The court addressed Mr. Wolfe and told him it viewed his role in the conspiracy as one of the lesser roles. Id. at p. 19. The court indicated it would impose a sentence at the bottom of Mr. Wolfe's USSG range—87 months' custody. Id. See also CR Docket No. 220 at p. 2. In explaining its sentence, the court did not mention the firearm. CR Docket No. 249 at pp. 19-20.

**E.    Mr. Wolfe's § 2255 Motion**

In his § 2255 motion, Mr. Wolfe articulates three claims for relief: (1) he alleges his counsel rendered ineffective assistance of counsel related to the issue of the firearm enhancement under the USSG, (2) he alleges his Fifth Amendment due process right was violated by punishing him for a crime that was dismissed, and (3) he asserts Federal Rule of Criminal Procedure 11 was

7

violated because there was a material misrepresentation (the two-level firearm enhancement).  Docket No. 1 at pp. 5-6.  The government now moves to dismiss Mr. Wolfe's § 2255 motion without holding an evidentiary hearing because, it alleges, Mr. Wolfe has failed to state a claim upon which relief can be granted.  Docket No. 18.

## DISCUSSION

### A.    Scope of a § 2255 Motion

Section 2255 of Title 28 of the United States Code was enacted to supersede habeas corpus practice for federal prisoners.  Davis v. United States, 417 U.S. 333, 343-44 (1974).  Section "2255 was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus."  Id. at 343. Prior to the enactment of § 2255, habeas claims had to be brought in the district where the prisoner was confined, resulting in overburdening those districts where federal correctional institutions were located and presenting logistical issues because the record in the underlying criminal case was often in a distant location.  United States v. Hayman, 342 U.S. 205, 212-16 (1952). The enactment of § 2255 resolved these issues by requiring that the motion be filed in the sentencing court.  Id.

The scope of a § 2255 motion is seemingly broader than the scope of a habeas petition, the latter of which is typically limited to allegations of a constitutional dimension.  Section 2255 allows a federal prisoner to "vacate, set aside or correct" a federal sentence on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that

8

the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." See 28 U.S.C. § 2255(a). Where the allegation for relief is *not* based on a violation of a Constitutional or federal statutory right or an assertion that the court was without jurisdiction, the Supreme Court has read a "fundamentality" requirement into § 2255—relief is available for only those errors which constitute a "fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure." Hill v. United States, 368 U.S. 424, 428 (1962); see Peguero v. United States, 526 U.S. 23, 27-30 (1999).

Generally, petitioners are precluded from asserting claims pursuant to § 2255 that they failed to raise on direct appeal. United States v. Frady, 456 U.S. 152, 167-68 (1982); McNeal v. United States, 249 F.3d 747, 749 (8th Cir. 2001). When a § 2255 petitioner asserts a claim that is procedurally defaulted because it was not raised on direct appeal, the claim can only proceed after the petitioner has shown either: (1) actual innocence or (2) that the procedural default should be excused because there was both cause for the default and actual prejudice to the petitioner. Bousley v. United States, 523 U.S. 614, 621-22 (1998); McNeal, 249 F.3d at 749. Therefore, barring a claim of actual innocence, a petitioner must show both cause for why he failed to raise an issue on direct appeal as well as actual prejudice caused by the alleged errors. If a movant fails to demonstrate prejudice, the court need not address whether

9

cause exists to excuse a procedural default.  Moore-El v. Luebbers, 446 F.3d 890, 898 (8th Cir. 2006).

Appellate courts generally refuse to review claims of ineffective assistance of counsel on direct appeal; such claims are, therefore, properly addressed in a 28 U.S.C. § 2255 motion such as the one here.  See United States v. Campbell, 764 F.3d 880, 892-93 (8th Cir. 2014); United States v. Lee, 374 F.3d 637, 654 (8th Cir. 2004) (ineffective assistance of counsel claims are not generally cognizable on direct appeal and will be heard only to prevent a miscarriage of justice or in cases where the district court has developed a record on the issue).  Therefore, no procedural default analysis is required before examining petitioner's claims of constitutionally-deficient counsel.

**B.    Rule 12(b)(6) Standard**

The government's motion to dismiss is made pursuant to Federal Rule of Civil Procedure 12(b)(6).  The Federal Rules of Civil Procedure are applicable to § 2255 habeas actions so long as the procedural rules do not conflict with the habeas statutes or the Rules Governing Section 2255 Cases in the United States District Courts ("Governing Rules").  See Governing Rule 12.  Federal Rule of Civil Procedure 12(b)(6) is not inconsistent with the Governing Rules. Compare Governing Rules 4 & 5 (allowing respondent to respond to petitioner's habeas petition with a motion), with Fed. R. Civ. P. 12(b)(6) (same); see also Ebert v. Clarke, 320 F. Supp. 2d 902, 909-10 (D. Neb. 2004) (holding that Federal Rule of Civil Procedure 12(b)(6) applies in habeas proceedings).

10

Rule 12(b)(6) allows dismissal of a habeas petition if the petitioner has failed to state a claim upon which relief can be granted. <u>See</u> Fed. R. Civ. P. 12(b)(6). Petitioners must plead "enough facts to state a claim to relief that is *plausible* on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007) (emphasis added).

Under Federal Rule of Civil Procedure 8(a)(2), a petitioner must plead only "a short and plain statement of the claim showing that the pleader is entitled to relief." <u>Id.</u> at 555 (quoting Fed. R. Civ. P. 8(a)(2)). A habeas petition does not need "detailed factual allegations" to survive a motion to dismiss, but a petitioner must provide the grounds for his entitlement to relief and cannot merely recite the elements of his cause of action. <u>Id.</u> at 555 (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957) & <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986)). There is also a "plausibility standard" which "requires a [petition] with enough factual matter (taken as true)" to support the conclusion that the petitioner has a valid claim. <u>Id.</u> at 556. The petitioner's complaint must contain sufficiently specific factual allegations in order to cross the line between "possibility" and "plausibility" of entitlement to relief. <u>Id.</u>

There are two "working principles" that apply to Rule 12(b)(6) motions. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). First, courts are not required to accept as true legal conclusions "couched as factual allegation[s]" contained in a petition. <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 555). Rule 8 "does not unlock

the doors of discovery for a [petitioner] armed with nothing more than conclusions." Iqbal, 556 U.S. at 678-79.

Second, the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679 (quoting decision below Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007)). Where the petitioner's allegations are merely conclusory, the court may not infer more than the mere possibility of misconduct, and the petitioner has *alleged*—but has not "show[n]"—that he is entitled to relief as required by Rule 8(a)(2). Iqbal, 556 U.S. at 679 (emphasis added).

The Court explained that a reviewing court should begin by identifying statements in the petition that are conclusory and therefore not entitled to the presumption of truth. Id. at 679-80. Legal conclusions must be supported by factual allegations demonstrating the grounds for a petitioner's entitlement to relief. Id. at 679; Twombly, 550 U.S. at 555; FED. R. CIV. P. 8(a)(2). A court should assume the truth only of "well-pleaded factual allegations," and then may proceed to determine whether the allegations "plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679. These are the principles guiding the court's evaluation of respondent's motion.

Rule 12(b)(6) requires the court to evaluate the sufficiency of a petitioner's pleading of a claim by examining his or her petition. See FED. R. CIV. P. 12(b)(6); Iqbal, 556 U.S. at 679. Rule 56, the rule for summary judgment, allows the court to consider affidavits, documents, deposition

transcripts and other items extraneous to the petition in determining whether to grant the motion. See FED. R. CIV. P. 56.

Courts evaluating a Rule 12(b)(6) motion are not strictly limited to evaluating the petition alone, however. Dittmer Props., L.P. v. F.D.I.C., 708 F.3d 1011, 1021 (8th Cir. 2013). They may consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." Id. (citing Miller v. Redwood Toxicology Lab., Inc., 688 F.3d 928, 931 n.3 (8th Cir. 2012) (quoting 5B Charles A. Wright & Arthur R. Miller, Fed. Practice & Procedure § 1357 (3d ed. 2004))).

Here, the court has considered documents from the underlying criminal proceedings in compliance with Governing Rules 4(b) and 5(c). Because these documents are of the type which the court would be allowed judicial notice, the court considers these documents in ruling on respondent's Rule 12(b)(6) motion. Dittmer Props., L.P., 708 F.3d at 1021; FED. R. EVID. 201(b); Governing Rules 4(b) & 5(c).

## C.    Ineffective Assistance Claim

### 1.    Standard for Ineffective Assistance of Counsel Claims

One of Mr. Wolfe's claims is that his Sixth Amendment right to the effective assistance of counsel was violated. The Sixth Amendment of the Constitution of the United States affords a criminal defendant with the right to assistance of counsel. U.S. Const. amend. VI. The Supreme Court "has

recognized that 'the right to counsel is the right to the effective assistance of counsel.' " Strickland v. Washington, 466 U.S. 668, 686 (1984) (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)). Strickland is the benchmark case for determining if counsel's assistance was so defective as to violate a criminal defendant's Sixth Amendment rights and require reversal of a conviction. Id. at 687.

"When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. The defendant must also show that counsel's unreasonable errors or deficiencies prejudiced the defense and affected the judgment. Id. at 691. The defendant must show "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695. In sum, a defendant must satisfy the following two-prong test. Id. at 687.

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

Id.

"There is a presumption that any challenged action was sound trial strategy and that counsel rendered adequate assistance and made all

14

significant decisions in the exercise of professional judgment." <u>Hall v. Luebbers</u>, 296 F.3d 685, 692 (8th Cir. 2002) (quotation omitted).  It is the petitioner's burden to overcome this presumption, and a "petitioner cannot build a showing of prejudice on a series of errors, none of which would by itself meet the prejudice test."  <u>Id.</u>

Counsel's conduct must be judged by the standards for legal representation which existed at the time of the representation, not by standards promulgated after the representation.  <u>Bobby v. Van Hook</u>, 558 U.S. 4, 7-9 (2009).  American Bar Association standards and similar directives to lawyers are only guides as to what reasonableness of counsel's conduct is; they are not its definitive definition.  <u>Id.</u>

The Supreme Court distinguishes between those cases in which the new evidence "would barely have altered the sentencing profile presented to the sentencing judge," and those that would have had a reasonable probability of changing the result.  <u>Porter v. McCollum</u>, 558 U.S. 30, 41 (2009) (quotation omitted).  In assessing the prejudice prong, it is important for courts to consider "the totality of the available mitigation evidence—both that adduced at trial, and the evidence adduced in the habeas proceeding—and reweigh it against the evidence in aggravation."  <u>Id.</u> at 40-41 (internal quotation omitted, cleaned up).  It is not necessary for the petitioner to show "that counsel's deficient conduct more likely than not altered the outcome" of his case, only that there is "a probability sufficient to undermine confidence in [that] outcome."  <u>Id.</u> at 44 (quotation omitted).  Judicial scrutiny of attorney

15

performance is highly deferential, with a strong presumption that counsel's conduct falls within the range of reasonable professional conduct.  <u>Strickland</u>, 466 U.S. at 698.

**2.   Application of the Standard to Mr. Wolfe's Claim**

Mr. Wolfe asserts several alleged failings of counsel, all related to the firearm enhancement in his PSR and at sentencing.  <u>See</u> Docket No. 1 at p. 5. He argues counsel failed to investigate and that, had counsel investigated properly, she would have discovered the state charges related to the firearm were dismissed after Mr. Wolfe's suppression motion in state court was granted because the search in which the firearm was discovered was declared illegal. <u>Id.</u>  He argues counsel failed to inform him that the firearm would be used to enhance his USSG range in the PSR.  <u>Id.</u>  Mr. Wolfe argues he would not have signed the plea agreement documents as written if he had known the firearm would be used against him as it was in the PSR.  <u>Id.</u>

Mr. Wolfe never states he would have availed himself of his right to a jury trial had it not been for counsel's allegedly ineffective representation.  Rather, the court infers Mr. Wolfe is asserting still he would have pleaded guilty, but would have insisted on changes to the plea agreement documents regarding the firearm.  <u>See</u> Docket No. 1 at p. 5.  The court notes that the firearm was never mentioned in either the written plea agreement or in the written factual basis statement.

Counsel submitted an affidavit in this § 2255 proceeding in which she states she and Mr. Wolfe only minimally discussed the firearm that was located

in his vehicle, which formed part of the basis for the two-level USSG increase. Docket No. 16 at p. 2, ¶ 10.  Counsel does not recall any discussion with Mr. Wolfe wherein he told her the firearm was suppressed in his corresponding state court case.  Id. at ¶ 11.  Counsel reviewed the discovery in Mr. Wolfe's case and was aware a firearm had been discovered in Mr. Wolfe's vehicle.  Id. at ¶ 12.  Counsel did not object to the firearm enhancement because she did not believe she would be able to show that the firearm was not connected to the drug activity Mr. Wolfe was accused of.  Id. at ¶¶ 14-15.  Counsel in her affidavit did not discuss the firearm located in the residence.

The final PSR notes that Mr. Wolfe's March 26, 2018, state firearm charge was dismissed on July 2, 2018, and his September 6, 2018, drug charge was not prosecuted.  CR Docket No. 204 at p. 13, ¶¶ 59-60.  When state drug charges are pending in conjunction with parallel federal charges arising out of the same facts—as they did in Mr. Wolfe's case—it is not unusual for the state prosecutors to dismiss their charges in favor of the usually greater penalties in federal court.  Therefore, the fact that Mr. Wolfe's state charges were dismissed or not prosecuted does not necessarily mean they were unfounded or without merit.

The government's motion to dismiss is based on the argument that Mr. Wolfe cannot satisfy the prejudice prong of the Strickland test.  Docket No. 19 at p. 5.  The government argues that when a defendant pleads guilty, as Mr. Wolfe did, showing Strickland prejudice requires him to show  "that, but for counsel's errors, he would not have pleaded guilty and would have insisted

17

on going to trial." Id. at p. 6 (quoting United States v. Davis, No. 99-4020, 2000 WL 1521611, at *1 (8th Cir. Sept. 12, 2000)).  Further, the government posits that Mr. Wolfe must show he would have fared better at trial.  Id. (quoting Hill v. Lockhart, 474 U.S. 52, 57-59 (1985)).

In determining whether, but for counsel's deficient performance, a petitioner would have gone to trial, the Supreme Court counsels that courts should look at contemporaneous evidence to substantiate the petitioner's assertion rather than post-hoc assertions made in habeas proceedings.  Lee v. United States, ___ U.S. ___, 137 S. Ct. 1958, 1967 (2017).  The Court stated:

> Surmounting Strickland's high bar is never an easy task, and the strong societal interest in finality has special force with respect to convictions based on guilty pleas.  Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies.  Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences.

Id. (internal quotations and citations omitted).

The case of Covington v. United States, 739 F.3d 1087 (8th Cir. 2014), is instructive.  In that case, Covington entered into a plea agreement which stipulated the base offense level under the USSG for his mail fraud plea should be calculated based on USSG § 2C1.1 which applies to honest-services fraud.[3] Id. at 1089-90.  At sentencing, the district court applied § 2C1.1 in calculating Covington's advisory USSG range.  Id.  Subsequently, Covington filed a § 2255 action alleging that § 2C1.1 did not apply to his mail fraud conviction and that

---

[3] Section 2C1.1 applies where "the scheme or artifice to defraud was to deprive another of the intangible right of honest services of a public official." Covington, 739 F.3d at 1089 (quoting commentary to USSG § 2C1.1).

counsel was ineffective in failing to object to its application both at the plea negotiation stage and at sentencing.  Id.

The court held Covington failed to demonstrate Strickland prejudice.  Id. at 1090.  "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Id. (quoting Hill, 474 U.S. at 59).  Covington did not demonstrate or even allege that, had his lawyer informed him § 2C1.1 was inapplicable to his case, he would have insisted on going to trial.  Id.  The court also faulted Covington for failing to show that his sentence would have been lower had he gone to trial.  Id.

As for the claim that counsel was ineffective for failing to object to the application of § 2C1.1 at sentencing, the court pointed out that such an objection would have been in violation of the terms of the plea agreement and would have risked having the plea agreement deemed to have been breached. Id. at 1091.  In that event, Covington would have been facing 48 counts of mail fraud instead of one.  Id.

The reasoning of the Covington case applies with equal force to Mr. Wolfe's case.  Mr. Wolfe never alleges that, but for counsel's alleged ineffectiveness, he would have gone to trial.  He states he "would not have signed the plea agreement with that type of language in the P.S.I."  Docket No. 1 at p. 5.  The court interprets Mr. Wolfe to be saying he would have still pleaded guilty—indeed he never asserts he was innocent—but he would

19

somehow have dictated to the government a plea agreement that precluded the consideration of the firearm as a guidelines enhancement.

The court notes that Mr. Wolfe knew at the time he pleaded guilty that his USSG range may be higher than he was anticipating and, if it was, he would not be allowed to withdraw his plea. CR Docket No. 247 at pp. 4-5, 6-7. He nevertheless voluntarily and intelligently entered a guilty plea. Then, when the draft PSR was disclosed to him, Mr. Wolfe knew the firearm enhancement was being applied to his USSG calculation, yet he did not object to it in his written allocution statement to the court. CR Docket No. 207. At the sentencing hearing, Mr. Wolfe knew the final PSR included the two-level firearm increase, yet when he orally addressed the court, he did not object to the enhancement. CR Docket No. 249 at pp. 12-13. All the contemporaneous evidence suggests Mr. Wolfe accepted the firearm enhancement and would not have chosen to go to trial rather than accept its application in his sentencing calculation.

But even if Mr. Wolfe's statement in this § 2255 action is tantamount to a statement he would have gone to trial, he must show something more—he must show that he likely would have received a lower sentence if he had availed himself of a trial. Covington, 739 F.3d at 1090. Mr. Wolfe never even addresses this issue, let alone carries his burden of showing it. The court concludes he has failed to demonstrate Strickland prejudice.

The gravamen of Mr. Wolfe's objection to the use of the firearm as a factor in his sentencing—an issue he himself had multiple chances to address

20

to the court prior to sentencing and did not—seems to be the injustice he perceives over the fact that the court used facts from a state court case that was dismissed to enhance his USSG range in federal court.  But this is nothing new or improper under the USSG.

Under the guidelines, other relevant conduct, such as carrying a gun in connection with a drug offense, can be considered at sentencing even if the conduct was part of a dismissed charge, uncharged conduct, or even a charge on which a defendant was acquitted at trial.  United States v. Azure, 536 F.3d 922, 932-33 (8th Cir. 2008) (holding a court may rely upon dismissed charges in fashioning a reasonable sentence under the guidelines); United States v. Left Hand Bull, 477 F.3d 518, 521 (8th Cir. 2006) (same); United States v. Galloway, 976 F.2d 414, 424 (8th Cir. 1992) (court may consider uncharged conduct in fashioning sentence under the guidelines); United States v. Dawn, 897 F.2d 1444, 1449-50 (8th Cir. 1990) (stating in dictum that courts may consider acquitted charges in calculating guidelines sentences).

Here, it is noteworthy that Mr. Wolfe never asserts he was innocent:  he never states he did not have a firearm in his vehicle or that the firearm was unconnected to his drug offense.  Indeed, the PSR makes clear that the firearm found in Mr. Wolfe's vehicle was connected to his drug distribution activity. See CR Docket No. 204 at pp. 6-7, ¶¶ 19-24 (detailing Mr. Wolfe's drug distribution activities in Minneapolis and stating on March 26, 2018, Mr.

Wolfe's vehicle was searched in connection with a search warrant issued for the residence he was staying at and a stolen firearm was found therein).[4]

The sole objection Mr. Wolfe makes to consideration of the firearm at his sentencing was that it was part of dismissed state court charges in Minneapolis. As the cases cited above make clear, the fact that the state court charges were dismissed is no barrier to consideration of the firearm in the federal sentencing. Had counsel made an objection to the consideration of the firearm in calculating Mr. Wolfe's sentence, such an objection would almost certainly have been overruled. The court concludes based on all of these facts and the law that Mr. Wolfe has failed to demonstrate <u>Strickland</u> prejudice.

**D.    Mr. Wolfe's Other Claims**

In addition to the above-discussed Sixth Amendment claim, Mr. Wolfe also raises two other claims: (1) that his plea violated Federal Rule of Criminal Procedure 11 because there was a material misrepresentation of fact (the firearm) and (2) that his Fifth Amendment right to due process was violated because he was held to answer for the firearm charge in federal court under

---

[4] Again, the final PSR also indicates the firearm found on September 6, 2018, was an independent factual predicate for the two-level enhancement. CR Docket No. 204 at p. 10, ¶ 39. Mr. Wolfe has not argued that counsel was ineffective for failing to object to the firearm enhancement as to this gun—his assertions relate only to the firearm allegedly suppressed in state court in June 2018, before the second firearm was discovered in September 2018. Docket No. 1 at p. 5. The court notes that, absent any challenge to the propriety of the firearm enhancement as to the second gun, Mr. Wolfe cannot show prejudice by attacking only the propriety of the enhancement as to the first gun. That is, even if counsel successfully objected to the enhancement related to the first gun, Mr. Wolfe has not adequately alleged prejudice because the enhancement related to the second gun would still apply and the offense level and USSG guidelines range would remain unchanged.

circumstances where the state charges were dismissed because a suppression motion was granted. <u>See</u> Docket No. 1 at pp. 5-6. The government argues both of these claims are procedurally defaulted and should therefore be dismissed.

As discussed above, if a prisoner did not raise a claim (other than ineffective assistance of counsel) in his direct appeal, then the claim is considered to be procedurally defaulted in a post-conviction proceeding. In order for the court to address the merits of a defaulted claim, the prisoner must show (1) cause and prejudice for the default or (2) a fundamental miscarriage of justice (actual innocence). <u>Bousley</u>, 523 U.S. at 621-22; <u>Frady</u>, 456 U.S. at 167-68; <u>Moore-El</u>, 446 F.3d at 898; <u>McNeal</u>, 249 F.3d at 749. Mr. Wolfe addresses neither of these issues in his § 2255 motion. <u>See</u> Docket No. 1. In addition, because he did not file a response at all to the government's motion to dismiss, he did not address it in any subsequent pleading either.

It is Mr. Wolfe's burden to show either cause-and-prejudice or a fundamental miscarriage of justice. <u>Bousley</u>, 523 U.S. at 621-22; <u>Frady</u>, 456 U.S. at 167-68; <u>Moore-El</u>, 446 F.3d at 898; <u>McNeal</u>, 249 F.3d at 749. He has failed to carry his burden. Accordingly, the court recommends granting the government's motion to dismiss Mr. Wolfe's ground II and ground III with prejudice.

## E.    No Evidentiary Hearing is Warranted

No evidentiary hearing is required if "the motion and the files and the records of the case conclusively show that [a § 2255 petitioner] is entitled to no relief,' " or "where the claim is inadequate on its face or if the record

23

affirmatively refutes the factual assertions upon which it is based.' " New v.
United States, 652 F.3d 949, 954 (8th Cir. 2011) (quoting Anjulo-Lopez v.
United States, 541 F.3d 814, 817 (8th Cir. 2008)).  "A district court may deny
an evidentiary hearing where (1) accepting the petitioner's allegations as true,
the petitioner is not entitled to relief, or (2) 'the allegations cannot be accepted
as true because they are contradicted by the record, inherently incredible, or
conclusions rather than statements of fact.' " Guzman-Ortiz v. United States,
849 F.3d 708, 715 (8th Cir. 2017) (quotting United States v.Sellner, 773 F.3d
927, 929-30 (8th Cir. 2014)).  Here, there are no factual issues requiring
credibility determinations.  Mr. Wolfe has failed to even address some of the
burdens he must carry to entitle him to an evidentiary hearing.  Accordingly,
his claim is inadequate on its face and no hearing is warranted.

## CONCLUSION

Based on the foregoing facts, law, and analysis, this magistrate judge
respectfully recommends granting the government's motion to dismiss [Docket
No. 18] in its entirety and dismissing Mr. Wolfe's § 2255 motion without
holding an evidentiary hearing.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this report and
recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1),
unless an extension of time for good cause is obtained.  Failure to file timely
objections will result in the waiver of the right to appeal questions of fact.
Objections must be timely and specific in order to require de novo review by the

24

district court. <u>Thompson v. Nix</u>, 897 F.2d 356 (8th Cir. 1990); <u>Nash v. Black</u>, 781 F.2d 665 (8th Cir. 1986).

DATED September 20, 2021.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge